UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Brent Johnson, individually and on behalf of all others similarly situated <br><br> Plaintiff, <br><br> v. <br><br> Ford Motor Company, <br><br> Defendant. | No. 1:23-cv-14027 <br><br> Judge Edmond E. Chang |

MEMORANDUM OPINION AND ORDER

In this proposed class action, Brent Johnson (and now Scott Jacobs too, R. 55) sued Ford Motor Company, alleging that Ford sold and leased vehicles with faulty backup cameras after making misrepresentations about and failing to disclose the camera defect to consumers.[1] Johnson alleged claims under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*; Oregon law governing breaches of express and implied warranty, Or. Rev. Stat. §§ 72.8060, 72.3140; the Washington Consumer

---

[1]The Court has subject matter jurisdiction over this case under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), which grants federal jurisdiction over proposed class actions in which any member of the proposed class is a citizen of a different state than the defendant and the matter in controversy exceeds $5,000,000. Johnson is a citizen of Washington. R. 13. Ford Motor Company is a citizen of Delaware, where it is incorporated, as well as Michigan, home to its corporate headquarters. R. 1, *Johnson* Compl. ¶ 16. The matter in controversy could exceed $5,000,000: Johnson claims the damages for his individual claims are at least $25,000, and given the large size of the proposed class—Johnson alleges that "several hundred thousand Class Vehicles" were purchased and that there are "at least … thousands" of class members— it is legally possible that the amount in controversy could exceed $5,000,000. *Id.* ¶¶ 23, 71, 143. In the newly filed First Amended Complaint, the new named plaintiff is Scott Jacobs, who is domiciled in California, R. 55, First Am. Compl. ¶ 16, so the jurisdictional analysis remains intact. Brent Johnson filed a voluntary dismissal on March 27, 2024. R. 56.

Protection Act, Wash. Rev. Code §§ 19.86.010 *et seq.*; and common law fraud and unjust enrichment. R. 1, *Johnson* Compl. ¶¶ 77–167.[2] But a few weeks prior to Johnson's filing, another class action suit alleging similar claims against Ford, *Dorfman v. Ford Motor Co.*, was filed in the Eastern District of Michigan. No. 23-12312 (E.D. Mich.); *see also* R. 24-1, *Dorfman* EDMI Compl. Given the overlap in the two lawsuits, Ford moved to transfer Johnson's suit to the Eastern District of Michigan. R. 23, *Johnson* Mot. Transfer at 1–2. The *Dorfman* plaintiffs then voluntarily dismissed their suit and refiled in this District. *Dorfman v. Ford Motor Co.*, No. 23-15607 (N.D. Ill.). Johnson, with the consent of the *Dorfman* plaintiffs, filed a motion to reassign and consolidate *Dorfman* with this case. R. 42, Mot. Reassign & Consolidate. For the reasons set forth below, Johnson's motion to reassign and consolidate *Dorfman* with this case is granted, but Ford's motion to transfer the cases to the Eastern District of Michigan is granted.

## I. Background

Ford make, sells, and distributes vehicles throughout the United States, and is incorporated in Delaware and headquartered in Michigan. *Johnson* Compl. ¶¶ 16–17. According to Johnson's complaint, Ford sold and leased new vehicles that were equipped with faulty "360-degree" backup cameras. *Id.* ¶¶ 3–8. Warranties, which stated that Ford would "repair, replace, or adjust all parts on your vehicle that

---

[2]Citations to the record in this case are "R." followed by the docket entry number and, if needed, a page or paragraph number. As noted earlier, the new named plaintiff is Scott Jacobs, but for convenience's sake, the Opinion will refer to the factual allegations in the original complaint, which was the operative pleading when the motion to transfer was filed.

malfunction or fail during normal use," accompanied the purchases and leases of these vehicles. *Id.* ¶ 25.

Ford, despite allegedly knowing that the cameras were defective, failed to disclose information about the defect and made false misrepresentations to consumers. *Id.* ¶¶ 44–45. In February 2021, Johnson, who lives in Washington, bought a Ford Explorer equipped with a 360-degree backup camera from a Ford dealership in Oregon. *Id.* ¶ 9. Later that year, the backup camera in Johnson's car began failing, showing only a blue screen when Johnson would put his car in reverse. *Id.* ¶¶ 10, 12. Johnson twice took his car in to Ford dealerships, one in Oregon and the other in Washington, to repair the defective camera. The dealerships' attempts to repair the issue were unsuccessful. *Id.* ¶¶ 10–11. Ford, after receiving various consumer complaints about the backup cameras, released software updates to try and resolve the problem, but to no avail. In August 2023, Ford issued a Part 573 Safety Recall Report that identified three causes of the camera defect: problems with the camera hardware, wiring retention, and image-processing software. *Id.* ¶ 40; R. 36-2, Aug. 2023 Safety Recall Report at 3–4. Johnson's backup camera nevertheless remained unrepaired. *Johnson* Compl. ¶¶ 12, 43.

Johnson filed this proposed class action suit, alleging that Ford had breached its express warranty and implied warranty of merchantability, engaged in unlawful, unfair, and deceptive trade practices, fraudulently concealed and failed to disclose information about the camera defect, and unjustly profited from its concealment and omissions. *Johnson* Compl. ¶¶ 77–167. Shortly before Johnson filed his suit, a group

3

of plaintiffs (the *Dorfman* plaintiffs, as mentioned earlier), filed a similar class action suit against Ford in the Eastern District of Michigan. The four *Dorfman* plaintiffs—comprised of a California resident, two Kentucky residents, and a Michigan resident—then voluntarily dismissed and refiled their suit in this District, bringing claims under the Magnuson-Moss Warranty Act; California, Kentucky, and Michigan consumer protection or warranty statutes; and common law breach of contract, fraud, and unjust enrichment. R. 42-1, *Dorfman* Am. Compl. ¶¶ 14, 25, 33, 41, 98–290. *Dorfman* was randomly assigned to another judge in this District. Local Rule 40.1.

With both cases now in this District, Johnson moves to reassign *Dorfman* and consolidate it with the instant case. Mot. Reassign & Consolidate. Meanwhile, Ford moves to transfer both cases to the Eastern District of Michigan. *Johnson* Mot. Transfer. The Court first addresses Johnson's motion before turning to Ford's.

## II. Reassignment and Consolidation

Johnson argues that reassigning and consolidating *Dorfman* with this case would "best promote[] judicial economy" because of "the similarities between the two cases." Mot. Reassign & Consolidate at 2. Ford does not oppose consolidating the two cases, though it maintains that the consolidation should occur in the Eastern District of Michigan. R. 46, Def.'s Consolidation Resp. at 1; *see also* R. 36-5, *Dorfman* Def.'s Br. at 15 ("Ford recognizes that judicial efficiency supports coordinating or consolidating [*Dorfman*] with *Johnson*.").

The Court agrees with the parties that reassignment and consolidation of the two cases is appropriate. Under Local Rule 40.4, the Court has discretion to reassign

4

a case so long as it is "related" to an earlier-numbered case—which includes when "the cases involve some of the same issues of fact or law"—and meets a set of four conditions:

> (1) both cases are pending in this Court; (2) the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort; (3) the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially; and (4) the cases are susceptible of disposition in a single proceeding.

N.D. Ill. Local R. 40.4(b)(1)–(4). And Federal Rule of Civil Procedure 42(a) allows the Court to consolidate cases if they "involve a common question of law or fact." Fed. R. Civ. P. 42(a); *see also Star Ins. Co. v. Risk Mktg. Group, Inc.*, 561 F.3d 656, 660 (7th Cir. 2009) (discussing a district court's discretion in consolidating cases).

Reassignment and consolidation of *Dorfman* with *Johnson* is warranted here because their factual and legal issues significantly overlap. Both suits center on alleged defects in and representations or omissions about Ford's 360-degree camera system. Both cases are putative class actions asserting claims under the Magnuson-Moss Warranty Act and state warranty and consumer protection statutes. Both cases also assert common law fraud and unjust enrichment claims. Also, the Court finds, and the parties do not dispute, that the four conditions for reassignment under Local Rule 40.4(b) are met: (1) both *Dorfman* and *Johnson* are pending in the Northern District of Illinois; (2) given the overlapping factual and legal issues in the two cases, handling of these cases by the same judge would likely result in a substantial saving of judicial time and effort; (3) *Johnson* has not progressed to the point where

5

reassigning *Dorfman* would be likely to delay proceedings; and (4) the cases are susceptible of disposition in a single proceeding in light of the legal and factual issues common to both cases. So the motion to reassign and to consolidate *Dorfman* with *Johnson* is granted.

### III. Transfer—Legal Standard

With the two cases consolidated, the Court next turns to Ford's motion to transfer the cases to the Eastern District of Michigan. *Johnson* Mot. Transfer; R. 36-4, *Dorfman* Mot. Transfer. A district court may "transfer any civil action to any other district or division where it might have been brought" for "the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). In deciding whether to transfer venue, courts consider whether (1) venue is proper in both the transferor and transferee courts; (2) the transferee district would be more convenient for the parties and witnesses; and (3) transfer would serve the interest of justice. *Gueorguiev v. Max Rave, LLC*, 526 F. Supp. 2d 853, 856 (N.D. Ill. 2007). Weighing the factors for and against transfer "necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986); *see id.* at 219 n.3 ("[I]t should be noted that the language of § 1404(a) does not indicate the relative weight to be accorded each factor."). The party seeking transfer bears the burden of establishing "that the transferee forum is clearly more convenient." *Id.* at 220.

### IV. Analysis

Neither the Plaintiffs (in either the Dorfman case or the formerly-Johnson-now-Jacobs case) nor Ford disputes that venue is proper in both this District and in the proposed transferee district, so the Court turns to whether transfer to the Eastern District of Michigan would provide more convenience and serve the interest of justice. After assessing these two considerations, the Court concludes that both weigh in favor of transfer.

### A. Convenience of the Parties and Witnesses

In assessing convenience of the parties and witnesses, "courts generally consider the availability of and access to witnesses," "each party's access to and distance from resources in each forum," "the location of material events," and "the relative ease of access to sources of proof." *Research Automation, Inc. v. Schrader–Bridgeport Int'l., Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (cleaned up).[3] When there is a tie—that is, "the inconvenience of the alternative venues is comparable,"—the plaintiff's choice of forum serves as the tiebreaker. *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 665 (7th Cir. 2003).

### 1. Witnesses

The availability of and access to witnesses weigh in Michigan's favor. Johnson contends that there are many Ford employees based in Chicago whose job titles suggest they were involved in manufacturing the defective backup cameras. R. 35,

---

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

*Johnson* Pl.'s Resp. at 8; *see also* R. 46-1, *Dorfman* Pls.' Resp. at 3 (asserting generally that "this District is likely the home to multiple relevant witnesses"). Ford, in turn, asserts that "all of the key witnesses at Ford—i.e., those involved in designing the Class Vehicles—reside or work (or both) in Michigan." R. 24, *Johnson* Def.'s Br. at 10; *see also Dorfman* Def.'s Br. at 9.

Ford, as the party seeking transfer, must "'clearly specify the key witnesses to be called and make at least a generalized statement of what their testimony' will include." *Hirst v. SkyWest, Inc.*, 405 F. Supp. 3d 771, 778 (N.D. Ill. 2019) (quoting *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989)). Merely referring to "all of the key witnesses at Ford," without any specificity or elaboration, is not enough. *See id.* (emphasizing that the movants had failed to "describe who, in particular, their key witnesses will be"); *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1168 (N.D. Ill. 1995) (noting that although the movants had identified specific witnesses, they "failed to demonstrate that the testimony of these witnesses is relevant to the issues in this case"). Ford attempts to justify this failure by reasoning that the litigation is still in its infancy and that, "given … [the case's] early posture, [Ford] cannot be expected to identify every witness who might be called to testify." R. 36, *Johnson* Def.'s Reply at 3 (citation omitted); R. 46-2, *Dorfman* Def.'s Reply at 5. But the infancy of litigation is no excuse—Ford's burden of specifying key witnesses and showing that transfer is warranted exists even at this early stage. *See CoStar Realty Info., Inc. v. CIVIX–DDI, LLC*, 2012 WL 5077728, at \*5 (N.D. Ill. Oct. 18, 2012) (concluding, in a case at the "early stage" of litigation, that movant had "not met its

8

burden of showing that venue is clearly more appropriate"). Ford's general assertion about all the "key witnesses at Ford" is not enough to establish that Michigan is the more convenient forum.

Having said that, Ford does identify—in its *Johnson* reply brief—one key non-party entity in Michigan: Magna, the manufacturer of the backup camera.[4] *Johnson* Def.'s Reply at 2–3; *see also Dorfman* Def.'s Br. at 9. The Safety Recall Report, which was quoted in Johnson's complaint, identifies three causes of the camera defect: problems with the camera hardware, including "internal connector misalignment" that "may occur during [the] manufacturing process"; wiring retention; and "[image-processing] software." *Johnson* Compl. ¶ 40 (quoting Aug. 2023 Safety Recall Report, at 3). After describing those "involved components," the Report identifies—this is crucial—Magna as the "component manufacturer." Aug. 2023 Safety Recall Report, at 3–4 (capitalization altered). And Magna's address, as listed in the Report, is in Michigan. *Id.* at 4. From this key Report, Michigan will almost surely be the more convenient forum for Magna employees, who will be important witnesses and would almost surely testify about the problems identified in the Report and the manufacturing process that produced the cameras at issue in this case. Also, although Johnson points to several Chicago-based Ford employees, courts are more concerned about the burden that trial might impose on *non*-party witnesses than the burden on a party's

---

[4] One of the *Dorfman* plaintiffs also lives in Michigan, but as discussed below, the convenience of non-party witnesses is more important than that of the parties.

employees, who presumably "will appear voluntarily." *Lewis v. Grote Indus., Inc.*, 841 F. Supp. 2d 1049, 1056 (N.D. Ill. 2012). This factor weighs in favor of transfer.

## 2. Access to Records and Resources

Turning to the parties' convenience, Ford bears the "burden of showing that the original forum is inconvenient for the defendant and that the alternative forum does not significantly inconvenience the plaintiff." *Rudy*, 666 F. Supp. 3d 706, 717 (N.D. Ill. 2023) (cleaned up); *see also Chambers v. N. Am. Co. for Life & Health Ins.*, 2011 WL 5868214, at *4 (N.D. Ill. Nov. 18, 2011). Nowadays, the wide availability of air transportation and electronic document transmission "make it easy" to litigate cases "with little extra burden in any of the major metropolitan areas." *Bd. of Trustees, Sheet Metal Workers National Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1037 (7th Cir. 2000). Nevertheless, courts "should bear in mind the parties' respective residences and their ability to withstand the expenses of litigating in a particular forum." *Tingstol Co. v. Rainbow Sales, Inc.*, 18 F. Supp. 2d 930, 934 (N.D. Ill. 1998) (cleaned up).

Ford argues that Illinois is inconvenient for it because it is headquartered in Michigan "and transferring this case there … will minimize the disruption to Ford's operations, minimize travel and lodging costs, and minimize the burden on Ford's employees." *Johnson* Def.'s Br. at 11. But, even taking this as true, Ford "is a large corporation" with a national presence and is "better able to bear the expense of litigating" in this District. *Heller Fin., Inc. v. Riverdale Auto Parts, Inc.*, 713 F. Supp. 1125, 1131 (N.D. Ill. 1989); *see also De Falco v. Vibram USA, Inc.*, 2013 WL 1122825,

at *10 n.9 (N.D. Ill. Mar. 18, 2013) (reasoning that "since the primary Defendant is a large corporation, and not an individual like the Plaintiff," it is in a "much better position to bear the relative inconvenience").

As for the named plaintiffs, however, none live in Illinois; they reside in Washington (before Johnson was dropped as a plaintiff), Kentucky, California, and Michigan. *Johnson* Compl. ¶¶ 16–17; *Dorfman* Am. Compl. ¶¶ 14, 25, 33, 41. So they would not be any more inconvenienced if the cases were transferred to Michigan than if the cases remained in Illinois (and in fact, it would be more convenient for the one *Dorfman* plaintiff who lives in Michigan). Johnson, in response, points out that three of his attorneys are based in Chicago. *Johnson* Pl.'s Resp. at 10. But generally speaking, the convenience of party attorneys is not a factor to be considered. *Moore v. Magiera Diesel Injection Servs., Inc.*, 2019 WL 2502029, at *4 (N.D. Ill. June 17, 2019) ("[T]he location of counsel is not a relevant factor under § 1404(a)." (cleaned up)); *see also Chi., Rock Island & Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955) (emphasizing that § 1404(a) does not "provide that the convenience of counsel is a factor to be considered").

On balance, after considering each party's convenience and Ford's ability to bear the expense of litigating in this District, this factor neither weighs for or against transfer.

### 3. Ease of Access to Sources of Proof

This factor is likewise neutral. Courts have recognized that "[w]here records are actually stored is less of a factor because documents now are easily scanned,

11

stored, and electronically transmitted and moving them no longer creates the onerous burden it may once have imposed." *Hirst*, 405 F. Supp. 3d at 778 (cleaned up); *see also First Nat'l Bank v. El Camino Res., Ltd.*, 447 F. Supp. 2d 902, 912 (N.D. Ill. 2006) ("When documents are easily transferable, access to proof is a neutral factor."). Aside from one piece of physical evidence that is presumably located in Michigan (the car of one of the *Dorfman* plaintiff's), Ford has not specified any sources of proof that would not be easily transferable—for instance, documents pertaining to Ford's business decisions about its warranties or marketing representations—even if the cases were to be litigated in Illinois. Because Ford has not shown that there is a material difference in producing proof in this District versus in the Eastern District of Michigan, access to proof does not support transfer.

### 4. Location of Material Events

The location of material events weighs in favor of transfer. For purposes of venue, the situs of material events "is the location where the defendant's decisions and activities that gave rise to the claim took place." *Rudy v. D.F. Stauffer Biscuit Co.*, 666 F. Supp. 3d at 716 (quoting *First Horizon Pharm. Corp. v. Breckenridge Pharm., Inc.*, 2004 WL 1921059, at *3 (N.D. Ill. July 21, 2004)). "Where a corporate defendant's conduct is at issue, courts often look to where the underlying business decisions were made." *Id.* (collecting cases).

The Plaintiffs argue that Illinois is where the material events occurred because Ford manufactured and assembled the defective vehicles, and first installed the

camera's software, at a Chicago assembly plant. *Johnson* Pl.'s Resp. at 7; *Dorfman* Pls.' Resp. at 6.

As discussed above, however, the Safety Recall Report states that the backup cameras, including the software, were manufactured by a third-party company located in Michigan. Aug. 2023 Safety Recall Report at 4. In other words, based on that Report, it appears the material events relevant to the manufacture of the defective cameras happened in Michigan, not Illinois.

What's more, the focus of the Plaintiffs' complaints is that Ford knew that its backup cameras were defective but nevertheless "failed to disclose the [d]efect" and made false misrepresentations to consumers. *Johnson* Compl. ¶ 14; *see also, e.g.*, *Dorfman* Am. Compl. ¶ 24. The decisions to make those misrepresentations or to hide information were likely made at Ford's headquarters in Michigan. *See Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 914 (N.D. Ill. 2009) (determining that in a suit focusing on marketing misrepresentations, the situs of material events was the place of defendants' headquarters, because that is where the "relevant decisions would have been made"); *Preston v. Am. Honda Motor Co.*, 2017 WL 5001447, at *3 (N.D. Ill. Nov. 2, 2017) ("[W]here a claim revolves around large-scale misrepresentations or statements to consumers, the situs of material events is where the defendant made the underlying business decisions."). Indeed, the Plaintiffs do not dispute that Ford probably made these decisions—and other underlying decisions, like warranty and design decisions—at its headquarters in Michigan. *See Dorfman* Pls.' Resp. at 5–6

13

(acknowledging "it may be true that Ford made corporate and warranty-related decisions in Michigan"). This factor supports transfer of these cases to Michigan.

### 5. Plaintiff's Choice of Forum

In total, the factors discussed above ultimately show that Michigan is the more convenient forum for the parties and witnesses. The Plaintiffs, however, assert that their choice of forum is entitled to deference. *Johnson* Pl.'s Resp. at 5–6; *Dorfman* Pls.' Resp. at 4–5. Although it is true that the plaintiff's choice is a tiebreaker when the inconvenience of the venues is comparable, *Nat'l Presto Indus.*, 347 F.3d at 665, there is no tie here. Also, as the Plaintiffs acknowledge, a plaintiff's choice of forum is entitled to less weight when representing a class. *See Jaramillo*, 664 F. Supp. 2d at 914 (noting that deference to the plaintiff's choice of forum "is greatly discounted in class actions"). Here, the discounted deference to the Plaintiffs' choice is not enough to outweigh the convenience factors that support transfer.

### B. Interest of Justice

Although transfer would serve the convenience of the parties and witnesses, the Court still must consider whether transfer would serve the "interest of justice." *See Coffey*, 796 F.2d at 220 (noting that the interest of justice "may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result"). The interest-of-justice prong of the transfer analysis is about "the efficient administration of the court system." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). Considerations include "docket congestion and likely speed to trial in the transferor and potential

14

transferee forums," each court's "relative familiarity with the relevant law," the "respective desirability of resolving controversies in each locale," and "the relationship of each community to the controversy." *Id.*

Docket congestion and likely speed to trial are overall a wash. Both parties rely on judicial caseload statistics for the 12-month period ending on June 30, 2023. U.S. District Courts—National Judicial Caseload Profile, June 2023, *available at* https://perma.cc/UHY6-WUNH. Ford points to the difference in the median time to trial for civil cases: 58.2 months in this District versus 48.7 months in the Eastern District of Michigan. *Id.* In other words, the median time from filing to trial is about 10 months shorter in the transferee district.

But time to trial is not the only relevant measurement; in fact, some courts consider time to *disposition* to be more helpful, given that civil cases go to trial infrequently. *See, e.g.*, *AL & PO Corp. v. Am. Healthcare Capital, Inc.*, 2015 WL 738694, at *5 (N.D. Ill. Feb. 19, 2015) (finding "the statistics regarding time to disposition more relevant than the average time to trial"); *Bureau of Consumer Financial Protection v. Fifth Third Bank*, 2021 WL 534658, at *5 (N.D. Ill. Feb. 12, 2021) ("Since cases often do not proceed to trial, … courts have held that the time to disposition is the more important metric." (cleaned up)); *Fernandes v. Deutsche Bank Nat'l Trust Co.*, 157 F. Supp. 3d 383, 391 (D.N.J. 2015) ("[B]ecause both Districts resolve relatively few cases by trial, the median time to disposition for all cases, not just trials, provides the more relevant measure of court congestion and speed to resolution of the average case."). This Court is persuaded that time to disposition is the more relevant indicator

here. And the median time to disposition is slightly shorter in this District: 6.5 months here versus 8.5 months in the Eastern District of Michigan. National Judicial Caseload Profile, June 2023. This is not significant enough of a difference to affect the transfer decision. *See Lewis*, 841 F. Supp. 2d at 1056 (determining that a 3.6-month discrepancy in time to disposition was "not significantly different").

The courts' relative familiarity with the relevant law is likewise not dispositive. Both this District and the Eastern District of Michigan are equally able to resolve the federal Magnuson-Moss Warranty Act claims. *See Camarena v. Vanderbilt Mortg. & Fin., Inc.*, 2015 WL 4036258, at *4 (N.D. Ill. July 1, 2015) ("[All] federal courts are presumed equally capable and experienced with respect to matters of federal law." (cleaned up)). And even though, as Ford argues, the transferee court may have greater familiarity with the *Dorfman* claims brought under the Michigan statutes, both this Court and the transferee court would nevertheless have to address out-of-forum state law, such as the Washington and California consumer protection statutes. *Cf. Edke v. Belden Inc.*, 2021 WL 3022322, at *7 (N.D. Ill. July 16, 2021) (declining to give weight to fact that transferor court had greater familiarity with an Illinois statute when both the transferor and transferee courts would have to "grapple with out-of-forum law and complex choice of law issues"). Plus, "[f]acing unfamiliar state law claims is business as usual in the federal courts and warrants little, if any, weight in assessing whether the interest of justice favors the transfer of a case to another district." *Hirst*, 405 F. Supp. 3d at 779–80. Familiarity with governing law thus does not weigh for or against transfer.

The last two considerations—the respective desirability of resolving controversies in each locale and the relationship of each community to the controversy—point to Michigan as the appropriate venue. Though "[a] court has an interest in resolving issues affecting residents of its district and state," a court in a different state may "have a stronger interest in resolving the underlying dispute that affects its companies and citizens who are named as defendants." *Bureau of Consumer Financial Protection*, 2021 WL 534658, at *5 (cleaned up). Michigan has a greater interest in resolving these cases, which involve the allegedly unlawful conduct of a corporation with its headquarters in Michigan. And as discussed earlier in this Opinion, the material events underlying these suits largely occurred at Ford's headquarters. Although Illinois has an interest in protecting its residents from illegal activity, this interest is shared with any other state in which Ford sold the defective products, including Michigan. *See Lewis*, 841 F. Supp. 2d at 1056 (holding, in a patent infringement case, that "the Northern District of Illinois's interest" in protecting its citizens from infringement "is entitled to diminished weight, as it is an interest common to the many districts in which [the defendant] sells its products"); *Preston v. Am. Honda Motor Co.*, 2017 WL 5001447, at *8 (N.D. Ill. Nov. 2, 2017) (holding that because the defendant sold its product "nationwide, the interest of Illinois courts in this dispute is no greater than the interest any other state's courts would have in the face of analogous litigation").

In sum, in light of the Eastern District of Michigan's inherent interest in resolving these cases, the interest of justice weighs in favor of transfer.

## V. Conclusion

On balance, the convenience of the parties and witnesses and the interest of justice weigh in favor of transfer. *See* Coffey, 796 F.2d at 219–20. The Court orders that the consolidated cases be transferred to the Eastern District of Michigan.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 28, 2024